

**the world is listening**

Audio Tour Contract

## *Luray Caverns*

NA00340



(W0792650 1 \) *AAI CONFIDENTIAL*

## AUDIO TOUR CONTRACT

THIS AUDIO TOUR CONTRACT (hereinafter, this **"Agreement"**) is made and entered into by and between **Antenna Audio, Inc.**, a Delaware corporation having its principal place of business at Building 1057, Fort Cronkhite, Sausalito, California 94965 (**"AAI"**) and **Luray Caverns Corporation** having a place of business at 970 U.S. Highway 211 West Luray VA USA 22835 (the **"Client"**) as of the "Effective Date" date set forth below. AAI and the Client each are referred to herein as a **"Party"** and collectively, the **"Parties."**

THIS AGREEMENT comprises this contract summary (this **"Contract Summary"**), as well as the Standard Terms and Conditions (the **"Standard Terms"**) and the Definitions (the **"Definitions"**), each of which is attached to this Contract Summary. The Standard Terms contain, among other things, provisions regarding representations and warranties, limitations of liability, intellectual property rights, and indemnification obligations.

WHEREAS, AAI is in the business of producing audio tours and providing audio interpretive services for cultural, natural, and historic sites and the like; and

WHEREAS, the Client desires to hire AAI to produce an audio tour for the site identified as the "Site" below and to provide equipment to the Client to allow visitors of the Site to listen to the audio tour;

NOW THEREFORE, in consideration of the foregoing and intending to be legally bound, the Parties hereto agree as follows:

1. BASIC DEFINITIONS. The following capitalized terms, when used in this Agreement, shall have the meanings set forth for them below. All other capitalized terms, when used in this Agreement, shall have the meanings set forth for them in this Contract Summary, the Standard Terms, or the Definitions. Except as the context otherwise requires, words defined in the singular shall have the corresponding meaning in the plural and *vice versa*, the masculine gender shall include the feminine and *vice versa*, and "include" (in all its forms) is not intended to be limiting and shall mean "includes without limitation."

a. **Site**: *The Cave at Luray Caverns*

b. **Opening Date**: March 1, 2009

c. **Site Public Hours**: Seasonal hours of operation as follows: April 1 – June 14: 9am – 6pm; June 15- Labor Day: 9am – 7pm; the day after Labor Day – October 31: 9am – 6pm; November 1 – March 31: 9am – 4pm (until 5pm on weekends). Client office hours 7:30 a.m. – 6:00 p.m. weekdays (excluding holidays).

d. **Audio Tour**: As per the Production Schedule, AAI will provide the following audio tours, which shall be produced by AAI in accordance with this Agreement, consist of a series of Messages that guide visitors through the Site, and played on the Equipment:

(1) Up to one hundred and twenty (120) minutes of English-language Production;

(2) Up to sixty (60) minutes of Translation Production in five (5) languages each (for a total of up to five hours) of the Client's choosing from the following: French, German, Italian, Spanish (European and Latin American), Welsh, Catalan, Russian, Polish, Dutch, Flemish. Notwithstanding the foregoing, up to two (2) of the five Translation languages can be of the Client's sole choosing.

(3) Up to sixty (60) minutes of Production, created from the English-language Production described in (1) above, for use on the Internet as a downloadable tour as contemplated hereunder, the subject and delivery date of which to be mutually agreed upon by the Parties during the Term, but not later than May 1, 2009; and

(4) Up to sixty (60) minutes of additional Production in the English language, the subject and delivery date of which to be mutually agreed upon by the Parties during the Term, but not later than May 1, 2011.

In addition to use on the Equipment, the Parties hereby agree that AAI shall have the right, but not the obligation, to make the Audio Tour available online for digital download as described in the Download Release attached hereto as Exhibit I.

e. **Representatives:**

(1) *Review Liaison*: Cornelia Spain (corneliagraves.spain@luraycaverns.com).

(2) *Operations Liaison*: Mike Stillwell (mike.stillwell@luraycaverns.com).

f. **Players:**

(1) AAI's **"X-plorer"** – a lightweight, solid state, portable information system whereby individual sound tracks can be selected and played by entering an index number; and

(2) In addition, AAI will provide AAI's **"GroupTour™"** system (**"GTS"**), a radio system that enables groups of visitors to simultaneously listen to a guided tour using a single transmitter unit with a group leader. Such GroupTour system shall include five (5) transmitters and one hundred and forty-four (144) receivers with accompanying equipment. Should the Client desire additional receiver units: (1) it shall give to AAI no less than thirty (30) days written notice; (2) the Parties shall mutually agree on the number of such additional receiver units in lots of thirty-six (36); (4) AAI shall use commercially reasonable efforts to supply such additional units as per a mutually agreeable schedule; and (4) such additional receiver units may remain at the Site for up to two (2) weeks or for an amount of time as mutually agreed upon by the Parties. Notwithstanding the foregoing, the Client may request up to two (2) such increases of receiver units per year of the Term at no additional charge. For any additional requests, the Client shall reimburse AAI for AAI's shipping costs for the shipment of such additional GTS receiver units and accompanying equipment to and from the Site.

2. RETENTION. The Client hereby retains AAI to produce the Audio Tours and to be the Client's exclusive audio and audio-visual tour provider for the Site in accordance with the Standard Terms attached hereto. During the Term, the Client shall not allow any other audio or audiovisual tour provider to produce tours or provide tour services and/or equipment at the Site.

3. KEY TERMS. AAI will produce the Audio Tour and lease the Equipment to the Client on the following terms:

a. **Term**. Agreement shall become effective upon signing, and shall remain in full force and effect for an initial period of five (5) years from the date of from the Opening Date (the "Initial Term"), unless earlier terminated pursuant to Section 14, "Termination". Upon completion of the Initial Term, the term of this Agreement shall, if mutually agreed in writing by the Parties renew for one three (3) year period ("Renewal Term"), provided, however, that a written amendment is executed not less than sixty (60) days prior to the expiration of such Initial Term..

b. **Fees**. The Client will be responsible for the following fees, due and payable in accordance with this Agreement.

(1) *Production Fee*: No production fee.

(2) *Per-Visitor Fee*: As per the Standard Terms, the Client shall pay to AAI a fee of $0.50 for each Visitor to the Site.

(3) *Minimum Annual Payment*: Notwithstanding the foregoing, for each year of the Term, and any renewal thereof, the Client shall pay to AAI per-Visitor fees for no less than 400,000 Visitors, an annual minimum payment of $200,000 (the "Minimum Annual Payment"). For the avoidance of doubt, at the end of any each year during the Term, should the Client's payment to AAI be less than the Minimum Annual Payment, the Client shall submit an additional payment to AAI to make up the difference between the Minimum Annual Payment and the amount already paid by Client to AAI for such year, such additional payment to be received by AAI no more than thirty (30) calendar days after the end of such year. For

purposes of calculating the Minimum Annual Payment, the number of Visitors to the Site shall be calculated on an annual basis starting on the actual Opening Date, and on each anniversary of the Opening Date during the Term the number of Visitors shall return to zero (0).

(4) *Rights Procurement Fee*: $75 per hour to be paid upon receipt of AAI's invoice to the extent the Client desires to procure rights to specific music or sound effects for the Audio Tour, but only after receipt of Client's prior written approval, which shall be given as per the Production Schedule.

(5) *Packing Supplies that are Lost, Stolen, or Damaged Beyond Repair*: $10 per Player unit and GTS Receiver unit installed at the Site.

(6) *Equipment that is Lost, Stolen, or Damaged Beyond Repair*:

| X-plorer System: | |
|---|---|
| Player unit | $500 each |
| Headsets | $10 each |
| 50-player Charging Systems | $5,000 each |
| Rolling Carts, if any | $750 each |

| GroupTour™ System: | |
|---|---|
| Receiver & Headset | $200 each |
| Transmitter | $200 each |
| Microphone | $300 each |
| 36-Unit Charger | $600 each |

4. ENTIRE AGREEMENT. This Agreement, including the Standard Terms and Definitions, contains the entire agreement between the Parties relating to its subject matter and supersedes and replaces all other prior or contemporaneous agreements, understandings, representations, warranties, or covenants by the Parties (whether in oral, written, electronic, or other form). This Agreement may not be amended or modified except by a written agreement signed by both Parties. No provision or breach of this Agreement may be waived except in writing signed by the Party granting such waiver. The failure or delay of any Party in exercising any rights granted it hereunder shall not constitute a waiver of any such right. No waiver by a Party of any default shall constitute a waiver of future or subsequent default.

5. COUNTERPARTS. This Agreement may be executed in any number of facsimile or original counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by duly authorized persons as of September 26, 2008 (the **"Effective Date"**).

**LURAY CAVERNS CORPORATION**

By: _____ PRESIDENT LCC
Print Name: John H.H. Graves
Title: President

CONTACT INFORMATION FOR NOTICES:
Attention: Alice Gray
Address: P.O. Box 748
      Luray, Virginia 22835
Telephone: 540-743-6551 X 221
Facsimile: 540-743-7088

**ANTENNA AUDIO, INC.**

By: _____
Print Name: _____
Title: _____  10-1-08

CONTACT INFORMATION FOR NOTICES:

Attention: Sarah Dines, Managing Director
Address: Antenna Audio, Inc.
      Building 1058, Fort Cronkhite
      Sausalito, CA 94965

Telephone: (415) 332-4862

Facsimile: (415) 332-4870

With a copy to:

Attention: Kelly Atkins
      Director of Legal Affairs
Address: Antenna Audio, Inc.
      Building 1058, Fort Cronkhite
      Sausalito, CA 94965

Telephone: (415) 332-4862 x 124

Facsimile: (415) 332-4870

10/01/2008  14:55  5407437888   LURAY CAVERNS                        PAGE  07/19

## STANDARD TERMS AND CONDITIONS

### 1. SCRIPT & PRODUCTION DEVELOPMENT.

a. Description. Pursuant to the terms and conditions of this Agreement, the Parties will cooperate in good faith and use commercially reasonable efforts for the purpose of developing the Audio Tour for the Site prior to the Opening Date for use on the Equipment. The length of each Audio Tour and other Audio Tour specifics are set forth in the Contract Summary to which these Standard Terms are attached. The number, location and type of Interviews conducted for the Production shall be mutually agreed upon by the Parties, but will not exceed three (3) per hour of English Production. Any additional Interviews shall be subject to an additional fee.

b. Production Schedule. As soon as reasonably practicable following the execution of this Agreement, AAI will submit a draft Production Schedule to Client. Client will have the opportunity to review and approve in its reasonable discretion the draft Production Schedule for a period of time after receipt from AAI not to exceed three (3) Working Days.

c. AAI Responsibilities. AAI will provide the following services, in accordance with the Production Schedule.

(1) *Scripts/Production.* Upon receipt of the Stop List, AAI will prepare the Scripts, the sound mix for each Message in the Audio Tour, and the Production. Such preparation will include all field recording, sound effects, editing, casting, direction, music selection and/or music composition, mixing, and post-Production requirements as set forth in the Production Schedule.

(2) *Personnel.* AAI will contract with and/or pay all Production personnel and otherwise handle all arrangements reasonably necessary and appropriate for the timely completion and delivery of the Production.

(3) *Rights Clearances.* If Client requests that a specific component that is copyrighted or otherwise restricted be included in the Production, AAI will use commercially reasonable efforts to acquire the appropriate rights for use in the Messages contained in the Audio Tour on the Equipment prior to the Final Script Approval date in the Production Schedule. After giving its prior written approval for any such expenditure (as per the Production Schedule), Client shall reimburse AAI for any and all fees and other costs associated with the procurement of the rights for such use, including the hourly rights procurement fee set forth in the Contract Summary. Client understands that AAI cannot predict or control the timing of rights clearances. Therefore, should any rights clearance not be available by the Final Script Approval date, AAI shall have the option, in its sole discretion, to remove the component(s) from the Production.

d. Client Responsibilities. Client shall provide the following services, at its sole cost and expense, and in accordance with the Production Schedule.

(1) *Production Items.* Client shall provide AAI with (i) the Stop List; (ii) two (2) complete sets of all requested Client Materials; and (iii) the list of desired Interview subject(s), if any.

(2) *Site Access.* Client shall provide AAI with access to the Site for "walk throughs" of the Audio Tours, if any. AAI will request permission from Client to work at the Site outside of the Site's normal working hours, such permission not to be unreasonably withheld or delayed.

(3) *Office.* During Client's normal working hours, Client shall provide AAI with reasonable office facilities at the Site, including a desk, and access to a phone, a direct phone line for fax/modem transmission, and if available access to either a wireless network or internet portal for use by AAI staff during the on-Site production and installation period.

(4) *Public Performance Licenses.* Except as set forth in **Section 1.c.(3)** (*Rights Clearances*) above, Client shall be responsible for obtaining any and all public performance or other licenses that are necessary for the public use and distribution of the Audio Tour at the Site.

e. Review Liaison. Client shall appoint a Review Liaison, initially as designated in the Contract Summary, and such Review Liaison shall serve as a single point of contact between AAI and Client with respect to the provision of required materials to AAI, the review and approval of the Scripts, narrator selection, and other elements of the Production, if any, as set forth in the Production Schedule. Client may designate a different Review Liaison by providing notice to AAI pursuant to this Agreement. Client understands and agrees that AAI will communicate primarily with the Review Liaison regarding the Scripts and Production, and that the Review Liaison shall be authorized by Client to make decisions and give approvals regarding same. The Review Liaison shall be responsible for:

(1) giving or obtaining all written approvals on behalf of Client, including with respect to the Production Schedule; and

(2) per the Production Schedule: (i) providing AAI with the necessary and/or requested Client Materials; (ii) providing AAI with the Stop List; (iii) collecting corrections and approvals from Client staff assigned to review the Scripts; (iv) resolving any conflicting comments prior to Script submission to AAI; (v) submitting one (1) copy of each Script, with finalized comments clearly indicated, to AAI; and (vi) if necessary, coordinating meetings between the AAI creative team and Client staff members.

f. Approvals. Client, through the Review Liaison, shall communicate corrections or approvals in writing to AAI within five (5) Working Days, or, where applicable, the time specified by the Production Schedule. All corrections must be mutually agreed upon in writing by the Parties before they are incorporated by AAI. If Client does not communicate any corrections or approvals with respect to any materials submitted by AAI within the applicable time period, then such materials shall be deemed to be approved by Client. Any changes requested by Client after approval will be mutually agreed upon and will be made at Client's sole expense.

g. Reimbursement. Client acknowledges that its failure to adhere to the deadlines and other commitments set forth in this Agreement and in the Production Schedule, including (1) failing to review submitted materials within five (5) Working Days or according to the Production Schedule; (2) missing Production Schedule deadlines; (3) requesting changes to the Stop List, Script, Narration or Interviews after written approvals; and (4) requesting changes in the finished Production after final approvals, may result in additional expenses and/or delays in the completion and delivery of the finished Production. Client shall be responsible and shall reimburse AAI promptly for any and all costs reasonably incurred by AAI as a result of Client not adhering to the commitments detailed in this Agreement and in the Production Schedule. AAI will use commercially reasonable efforts to minimize such additional expenses and will obtain the Client's prior written approval of such additional expenses prior to incurring them, such approval not to be unreasonably withheld or delayed.

2. EQUIPMENT AND OPERATIONS.

a. Description. During the Term, AAI shall use commercially reasonable efforts to provide sufficient X-plorer Players and associated Equipment in good working order to meet Visitor Demand. AAI shall have the right to adjust the levels of Equipment as it deems, in its reasonable discretion, to be appropriate to meet Visitor Demand. In addition, AAI shall provide a GTS System to the Client as described in the Contract Summary.

b. AAI Responsibilities. AAI will have the following obligations.

(1) Delivery. AAI will deliver the Equipment at the Site and will pay all associated shipping expenses.

(2) Return Shipment. Upon the expiration or termination of this Agreement, AAI will be responsible for the shipping costs of returning the Equipment to AAI.

c. Client Responsibilities. Client shall have the following obligations, to be satisfied at Client's sole expense.

(1) Operations Liaison. Client shall appoint an Operations Liaison, initially as designated in the Contract Summary, and such Operations Liaison shall serve as a single point of contact between AAI and Client with respect to the day-to-day operations

of the Audio Tour and Equipment at the Site. Client may designate a different Operations Liaison by providing notice to AAI pursuant to this Agreement.

(2) *Stop Labels*. Client shall create, print, and apply all labels that identify Stops in the Site. The design of such labels (including the minimum font size of the Stop numbers) shall be determined by Client in consultation with AAI.

(3) *Storage*. Client shall provide a safe, lockable storage area for the Equipment and the packing materials for the Equipment.

(4) *Power*. Client shall provide sufficient power for the operation of the Equipment.

(5) *Access*. Client shall provide AAI with access to the Site at all reasonable times for the purpose of inspecting the Equipment or observing its use or storage.

d.  Maintenance. Client shall not make any alterations, additions, improvements, or repairs to the Equipment without AAI's prior written consent.   At its sole cost, AAI will use commercially reasonable efforts to maintain the Equipment in good working order and shall be responsible for monitoring, repairing, and replacing Players in need of repair or replacement. AAI shall designate a Washington, D.C. based technician to oversee necessary maintenance issues with the Equipment on the Site to ensure that any malfunctions regarding the Equipment are cured within a reasonable time period.

e.  Ownership.  All right, title, and interest in and to the Equipment is and shall remain owned exclusively by AAI at all times.  Client will not have, or at any time acquire, any right, title, or interest in the Equipment, except the right to possession and use as provided herein. Client may not pledge, hypothecate, create a security interest in, sell, or otherwise transfer any Equipment. Any use of the Equipment other than by a visitor to the Site, AAI staff, or Client staff in accordance with this Agreement at the Site shall require the express prior written consent of AAI.

f.  Security and Player Replacement. Client shall ensure that Client staff and security personnel associated with Audio Tour operations shall be familiar and shall comply with the security procedures for the Equipment as

provided to Client by the AAI Client Service Manager prior to the Opening Date.  Client shall store and use the Equipment in a careful and proper manner in accordance with AAI's reasonable instructions.   Client shall be responsible for the expense of replacing Equipment or packing materials that are lost, stolen, or damaged beyond repair in the applicable amounts set forth in the Contract Summary. Such fees shall be due thirty (30) days upon receipt of an AAI invoice.

3.  MANAGEMENT & STAFFING.

a.  Staffing by Client. The Client shall provide the staffing for Audio Tour distribution at the Site, and the Parties further agree as follows.

(1)  AAI shall provide on-site training and operations manuals for Client staff or volunteers who may be handling Audio Tour operations.

(2) Client shall provide a sufficient number of trained and competent personnel to manage and operate Audio Tour sales and/or distribution at all times during Site Public Hours.

(3) After installation or on-site training, AAI shall have no ongoing operational responsibilities, with the exception of the responsibilities set forth in **Section 2** (*Equipment and Operations*) hereof, and remote operations support as mutually agreed.

4.  FINANCIAL TERMS.

a.  Production Fees.  Client shall pay to AAI the Production fees, if any, in the amounts and at the times set forth in the Contract Summary. In addition, Client shall pay to AAI the actual fees for procured rights and the administrative fees and cost reimbursements associated therewith, as set forth in **Section 1.c.(3)** (*Rights Clearances*) and as further described in the Contract Summary. Such fees are due thirty (30) days upon receipt of an invoice to Client.

b.  Per-Visitor Fees. Client shall ensure that during Site Public Hours the Audio Tour shall be made available, without additional charge to all Visitors. Client shall pay to AAI the Per-Visitor Fees for each Visitor set forth in the Contract Summary (the "**Per-Visitor Fees**"). Members of Client staff, AAI staff, holders of valid Benefit Cards and up to two hundred (200) complimentary visitors of the Client's choosing may take the Audio Tour free of charge and such staff shall not count as Visitors for purposes of this Agreement.

c. Per-Visitor Fee Payment. Client shall pay all Per-Visitor Fees to AAI on a monthly basis within thirty (30) calendar days of the end of the month in which the income was generated. Any balance owed to AAI, including any Minimum Annual Payment, is due within thirty (30) calendar days of the close of each year of the Term, or termination or expiration of this Agreement. Client acknowledges that no invoice shall be submitted by AAI to Client for these payments, as Client is the holder of the necessary attendance statistics.

d. Statistics. Along with the monthly payment described above, Client shall submit to AAI the following statistics: (1) Site attendance; (2) Player usage; and (3) complimentary visitors for the previous month. Additionally, on a weekly basis, Client shall provide to AAI a report in the same format as the monthly report but for the previous week. Such report shall be provided via email to the attention of AAI's Account Manager or such person as AAI shall specify from time to time. Client understands that AAI utilizes these statistics to create an effective maintenance schedule for the Equipment. Without timely receipt of these statistics, AAI cannot optimally service the Equipment and will not be responsible for any delays in servicing Equipment as a result thereof.

e. Taxes. If applicable, the Client shall provide AAI with a non-profit sales tax exemption certificate, or resale certificate. If such certificate is not received by AAI within fifteen (15) days of the signing hereof, or if the Client's state does not allow such certificates as a waiver for sales tax, the appropriate sales tax will be added to the fees due hereunder. The Client shall collect, report, and deposit, with the applicable state or local entities, any and all use, or similar taxes or fees now or hereafter imposed by any jurisdiction upon the lease, sale, or use of the Audio Tour or the Equipment (other than tax on AAI's gross income).

f. Payment. All accounts past due shall be charged interest at a rate of one and one-half percent (1.5%) per month or the maximum rate permitted by law, whichever is less. Client's obligation to pay fees hereunder is absolute and unconditional.

5. RECORDS; AUDIT.

a. Records. Primary records of all Site attendance shall be maintained by Client during the Term and for a period of eighteen (18) months thereafter.

b. Audit. At its option, AAI may initiate, at any reasonable time, upon ten (10) Working Days prior written notice to Client, a complete audit Client's books and records relating to Site attendance, payment to AAI, and Client's performance of its obligations under this Agreement. If such audit discloses a deficiency by Client, Client shall promptly pay AAI the amount of any deficiency, together with interest at a rate of one and a half percent (1.5%) per month or the highest rate allowed by law, whichever is lower, from the date on which such amount became due to AAI. If such audit reveals a deficiency of five percent (5%) or more of the revenue previously computed and paid by the Client to AAI, then Client shall promptly pay to AAI the costs and expenses of such audit in addition to the amount of such deficiency.

6. MARKETING.

a. References & Advertising. Throughout the Term, in all references to the Audio Tour, Client shall refer to the Audio Tour as: "an Antenna Audio Tour." Client shall refer to the Player at all times in any medium as an "X-plorer™."

b. AAI and Client Marketing Rights. AAI shall have the right during the Term to (1) mail promotional material regarding the Audio Tour and the Site to AAI's own client list; (2) place labels, or other branding on the Equipment giving credit to or promoting, AAI, its parents, licensors, or sponsors. AAI shall have the right during the Term and thereafter to refer to Client as a client in its promotional materials. Client shall have the right during the Term to promote the Audio Tour as allowed hereunder, and name AAI as "Antenna Audio" or "Discovery Audio" as requested in advance by AAI, on all of Client's marketing materials.

c. Promotional Signs. At its own cost and after consultation with AAI, Client may construct and supply its own promotional or credit signage for the Audio Tour at the Site.

d. Licensors. Where necessary or appropriate, Client hereby permits AAI to credit music licensors

for their contributions to the Audio Tour, including within the Production.

e. Complimentary Audio Tours. AAI staff, Client staff, visitors with a valid Benefit Card, and press with valid ID may receive the Audio Tour, and where applicable, entrance to the Site, free of charge.

## 7. INSURANCE.

While the Equipment is on Site premises, Client shall maintain, at Client's expense, customary all-risk blanket insurance coverage for the Equipment in amounts at least equal to the replacement value of the Equipment, with a loss payable endorsement in favor of AAI or naming AAI as an additional insured. Client shall provide AAI with written verification of this coverage under said policy or policies of insurance. With respect to each policy of such insurance and each renewal thereof, Client on the Effective Date, and thereafter not less than thirty (30) Working Days prior to the expiration of any such policy, shall furnish AAI written notice that such coverage is in effect and/or has been renewed, as applicable.

## 8. CONFIDENTIALITY.

a. Obligations. Each Party shall keep confidential the terms of this Agreement and any information or materials designated in writing by the other Party to be confidential. Each Party will use reasonable means to safeguard such confidential information and shall not use or disclose such confidential information except as necessary to fulfill or enforce such Party's rights and obligations herein. However either Party may disclose this Agreement in confidence to its officers, directors, attorneys, accountants, auditors, tax preparers, insurers, and actual or bona fide prospective investors or acquirers or with the other Party's prior written consent, such consent not to be unreasonably withheld, delayed, or conditioned. In addition, either Party may disclose this Agreement to the extent required by any regulatory agency, tax agency or authority, order of any court of competent jurisdiction, or other applicable law, order, rule, or regulation, provided that such Party has given notice to the other Party of such required disclosure such that the other Party has the opportunity to prevent or limit such required

disclosure by, for example only and without limitation, seeking a protective order, and provided further that such Party reasonably cooperates with the other Party in any attempt to prevent or limit such required disclosure.

b. Exceptions. The obligations in this Section will not apply, or will cease applying, as the case may be, to specific information of the other Party to the extent that: (1) it is in the public domain at the time of disclosure to the receiving Party or, at the time of an alleged breach hereof, has entered the public domain other than as a result of any act or failure to act on the part of the receiving Party; (2) it was rightfully in the receiving Party's possession prior to receipt or disclosure from the disclosing Party without any confidentiality, fiduciary, or similar obligation; (3) at the time of an alleged breach hereof, it had been obtained from any third Party not under any confidentiality, fiduciary, or similar obligation; (4) at the time of an alleged breach hereof, it had been independently developed by persons without reference to any confidential information of the disclosing Party; or (5) the disclosing Party has given the receiving Party prior written permission to treat such information as not confidential. In addition, the obligations under this Section will terminate ten (10) years after the expiration or termination of this Agreement.

## 9. NON-SOLICITATION.

During the Term and for a period of one (1) year thereafter, Client shall not, without AAI's prior written consent, solicit any employee, consultant or subcontractor of AAI, directly or indirectly, for the purpose of hiring or engaging such employee, consultant or subcontractor, or causing such employee, consultant or subcontractor to terminate his or her relationship with AAI.

## 10. IP RIGHTS.

a. Client and AAI Materials. As between AAI and Client, all right, title, and interest in and to Client Materials, together with all IP Rights associated therewith, are and shall be owned exclusively by Client and their licensors. As between AAI and Client, all right, title, and interest in and to the AAI Materials, together with all IP Rights associated therewith, are and shall be owned exclusively by AAI and its licensors. Client hereby grants AAI a fully-paid, non-exclusive, worldwide, non-transferable, and non-sublicensable license to

use Client Materials during the Term solely for the purpose of fulfilling AAI's obligations or exercising its rights under this Agreement. Except as and to the extent otherwise provided in this Agreement, neither the execution nor the performance of obligations under this Agreement shall give any Party any ownership interest in any materials or IP Rights owned by any other Party as of the Effective Date.

b. Master Recording.

(1) *Ownership.* Subject to **Section 10.a.** (*Client and AAI Materials*) hereof, and as between AAI and Client, the Parties intend that the compilation and sound recording copyrights in the Master Recording shall be jointly owned by AAI & Client. AAI will place a copyright notice in the name of AAI & Client on the Master Recording and all copies it makes thereof. AAI will retain possession of the original physical medium on which the Master Recording is made and will provide Client with one (1) copy thereof.

(2) *Use.* Client may use no more than ten (10) mutually agreed upon Messages from the Master Recording on Client's own website to promote the Site during the Term, provided that Client does not charge anyone for such use. AAI may use the Master Recording, in whole or in part, for its own promotional purposes as an example of AAI's work in AAI's portfolio with prospective clients. Each Party may retain one (1) copy of the Production for archival purposes. However, each Party acknowledges that the elements of the Master Recording will be cleared only for use in the Audio Tour at the Site on the Equipment and not for any other use, including without limitation for use with third parties other than as permitted in this Section, for transmission over the Internet other than as permitted in this Section or for sale to third parties on a CD, cassette, or other medium. As such, each Party agrees that it shall not:

(a) copy, use, perform, distribute, or modify the Master Recording or any portion thereof except on the Equipment as necessary to fulfill its obligations hereunder;

(b) use, perform, or distribute the Master Recording on any other equipment, technology or medium other than the Equipment; or

(c) pledge, hypothecate, license, sell, assign, or transfer, by operation of law or otherwise, any of its copyright or other interest in the Master Recording to a third party without the prior written consent of the other Party.

(3) *Registration; Enforcement.* Both Parties will have the right (but not the obligation) to register and enforce the copyrights that are jointly owned hereunder, naming both Parties as joint copyright holders by notifying the other Party in advance to confirm the other Party has not already done the same. The Parties shall equally receive and retain all amounts awarded as damages, profits, or otherwise in connection with any such enforcement. The non-registering Party will reasonably cooperate with the registering Party and execute all documents reasonably requested by the registering Party in connection with any such registration or enforcement, without charge but at no cost to the non-registering Party.

(4) *Extent.* Other than as expressly set forth herein, and regardless of any duties that would otherwise be imposed by law, the Parties shall have no duty to account to each other for their respective uses of the Master Recordings. This Section will continue for the duration of the U.S. copyright in the Master Recordings.

c. Equipment. Client understands that it holds no IP Rights or other rights in the Equipment, and that neither the execution nor the performance of this Agreement shall confer any such rights on Client.

d. Proprietary Notices. Client shall not remove, obscure, deface, or alter any the AAI or AAI name, trademarks, service marks, logos, model numbers, serial numbers, labels, copyright notices, or any indications of IP Rights on, and shall not affix any other trademarks, trade names, model designations, labels, or other external graphic or textual component to, any Equipment, AAI Materials, or the Master Recording without AAI's prior written consent.

11. REPRESENTATIONS AND WARRANTIES.

a. AAI. AAI represents and warrants that, to AAI's knowledge as of the Effective Date, the AAI Materials, when used as contemplated in this Agreement, shall not infringe or misappropriate any third party copyrights under United States law.

b. Client. Client represents and warrants that, to Client's knowledge as of the Effective Date, Client Materials, when used as contemplated by this Agreement, shall not infringe or misappropriate any third party copyrights under United States law.

c. NO OTHER WARRANTIES. EXCEPT FOR THE WARRANTIES CONTAINED IN THIS SECTION, AAI DOES NOT MAKE AND EXPRESSLY DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE AAI MATERIALS, THE EQUIPMENT, THE MASTER RECORDING, AND THE SERVICES TO BE PERFORMED HEREUNDER, WHETHER EXPRESS, IMPLIED, OR STATUTORY, INCLUDING ANY IMPLIED WARRANTIES OF TITLE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. Client's sole and exclusive remedy for any breach of the warranty set forth in this Section shall be as set forth in **Section 12** *(Indemnification)* hereof.

12. INDEMNIFICATION.

a. Indemnity. Each Party will indemnify and hold harmless the other Party, its Affiliates, and their respective trustees, officers, employees, and agents from and against any damages, liabilities, costs and expenses, including reasonable attorneys' fees, arising out of or relating to such Party's material breach of this Agreement or any claim by a third party that constitutes a material breach of any of such Party's representations, warranties, or obligations under this Agreement.

b. Notice. As conditions to the indemnity rights set forth in this Section, the Party seeking indemnity (the **"Indemnified Party"**) will (1) provide written notice of any claim as to which the indemnity is sought to the other Party (the **"Indemnifying Party"**) within thirty (30) Working Days after the Indemnifying Party is first aware of such claim and (2) reasonably cooperate in the defense of or response to such claim, including reasonable cooperation and full information.

c. Mitigation. If the Audio Tour is, or in AAI's reasonable judgment may become, the subject of any claims of misappropriation or

infringement of third party IP Rights, AAI may, at its sole option and expense, (1) procure a license for Client to continue to use the Audio Tour in accordance with this Agreement; (2) replace the allegedly offending component of the Audio Tour with a reasonably equivalent component; or (3) modify the Audio Tour to eliminate any infringement or misappropriation, provided that the modified Audio Tour is reasonably equivalent to the original.

13. LIMITATION OF LIABILITY.

a. Limitations. UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES OF ANY KIND OR NATURE WHATSOEVER, ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT, THE MASTER RECORDING, THE EQUIPMENT, OR THE SERVICES TO BE PROVIDED BY AAI HEREUNDER, INCLUDING LOST GOODWILL OR LOST PROFITS, AND WHETHER ARISING OUT OF BREACH OF WARRANTY, BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR OTHERWISE, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR IF SUCH DAMAGES COULD HAVE BEEN REASONABLY FORESEEN. IN NO EVENT SHALL EITHER PARTY'S AGGREGATE LIABILITY WITH RESPECT TO THIS AGREEMENT EXCEED THE TOTAL FEES AND REIMBURSEMENTS PAID OR PAYABLE TO AAI UNDER THIS AGREEMENT.

b. Exceptions. The foregoing limitations shall not apply: (1) to any claims brought by a Party against the other for a material breach of confidentiality or for infringement or misappropriation of its IP Rights or (2) to any indemnification pursuant to **Section 12** *(Indemnification)* hereof.

14. TERMINATION.

a. Termination for Cause. If a Party is in Default (as defined below), the other Party may, immediately upon written notice to the Party in Default, terminate this Agreement, or withhold, until such time as the Default is cured, any payments due or services to be performed hereunder

after the date of such written notice. **"Default"** occurs if: (1) a Party is in material breach of its obligations under this Agreement that is not cured within twenty (20) Working Days after receipt of written notice of such breach (or, in the case of nonpayment of fees or expenses within ten (10) Working Days after receipt of written notice); (2) a Party is in material breach of its obligations under **Sections 8** *(Confidentiality)*, **9** *(Non-Solicitation)* or **10** *(IP Rights)* hereof; or (3) a Party makes an assignment for the benefit of its creditors, files a voluntary petition in bankruptcy, is the subject of an involuntary petition in bankruptcy that is not discharged within thirty (30) Working Days, or applies for or permits the appointment of a receiver or trustee for its assets.

b. Effect of Termination. Upon expiration or termination of this Agreement for any reason: (1) all of AAI's obligations to perform services then in effect (but not any of Client's payment obligations accrued prior to termination) shall terminate; (2) Client shall make no further use of the Equipment and shall cooperate with AAI in surrendering possession of all Equipment to AAI; and (3) the following Sections, together with all definitions and any provisions that by their nature or terms should survive termination, shall survive: **Sections 5** *(Records: Audit)*, **8** *(Confidentiality)*, **9** *(Non-Solicitation)*, **10** *(IP Rights)*, **12** *(Indemnification)*, **13** *(Limitation of Liability)*, and **15** *(General)* hereof.

15. GENERAL.

a. Force Majeure. No Party shall be liable for any act, omission, failure, or delay to fulfill its obligations under this Agreement (other than for the payment of any money) resulting from any cause beyond its reasonable control, including acts of God, strikes, terrorism, lockouts, riots, acts of war, epidemics, fire, communication line failures, power failures, earthquakes or other disasters. In the event of Force Majeure affecting AAI or Client, the Party who is unable to fulfill its obligations shall immediately notify the others in writing of the reasons for its failure to fulfill its obligations and the effect of the failure and use all reasonable endeavors to avoid or remove the cause and perform its obligations as soon as possible.

b. No Agency. Both Parties are independent contractors. Nothing contained in this

Agreement shall be deemed or construed by the Parties hereto, or by any third person, to create an agency, partnership, joint venture, franchise, fiduciary, or employment relationship or any other association between the Parties. Client has no authority to, and shall not, make any representation, warranty, or covenant on behalf of AAI.

c. Assignment. Client may not pledge, hypothecate, assign, or transfer, by operation of law or otherwise, this Agreement to a third party without the prior written consent of AAI (such consent not to be unreasonably withheld or delayed). Except as expressly set forth in this paragraph, this Agreement may be freely pledged, hypothecated, assigned or transferred and shall inure to the benefit of and be binding upon each Party's permitted successors and assigns. Any pledge, hypothecation, assignment, or transfer in violation of this paragraph shall be null and void and shall be grounds for immediate termination of this Agreement upon notice.

d. Third Party Rights. The Parties do not intend for any provision of this Agreement to be enforced by or to confer any benefit upon any third party.

e. Remedies. Except as otherwise stated herein, the remedies provided herein are not exclusive and the Party suffering from a breach or default of this Agreement may pursue all other remedies, both legal and equitable, alternatively or cumulatively.

f. Injunctive Relief. Notwithstanding anything herein to the contrary, a Party may seek to enjoin any breach or threatened breach of this Agreement or to enforce its rights with respect to the protection of such Party's IP Rights or confidential information through equitable relief, including a temporary restraining order or preliminary or permanent injunction, in a court of competent jurisdiction without the necessity of posting a bond in seeking the same. Each Party waives any argument that the other Party has an adequate remedy at law for any breach of the confidentiality or IP Rights provisions herein.

g. Notices. Unless otherwise set forth herein, any notices required hereby or desired to be given by any Party to the others, shall be given in writing and shall be given by personal delivery (including by professional courier or overnight delivery service), first-class mail, return receipt requested, or facsimile transmission (but only if a confirming

copy is sent by one of the other means permitted herein) at the contact information for such Party set forth on the signature page to this Agreement. Mailed notices shall be deemed to have been received five (5) Working Days after deposit in the mail. Facsimile notices shall be deemed to have been given upon the first Working Day on or after the date the transmitting machine confirms such transmission. Personal delivery or overnight delivery service shall be deemed effective the date of delivery to the receiving Party.

h. Severability. If any provision of this Agreement is held by an arbitrator or court of competent jurisdiction to be invalid or unenforceable, the remaining portions of this Agreement shall remain in full force and effect, and such arbitrator or court shall be empowered to modify such provision to the minimum extent necessary to render it enforceable while effectuating insofar as possible the basic purposes of such provision.

i. Interpretation. Regardless of its place of physical execution, this Agreement shall be interpreted in accordance with and subject to the laws of the State of California without regard to conflicts of laws principles. The captions in this Agreement shall have no effect on its interpretation.

# ANTENN·A·UDIO

## DEFINITIONS

| | |
|---|---|
| "AAI Materials" | any materials, technology, or information owned or licensed by AAI as of the Effective Date, or created or provided by AAI in the course of performing services hereunder, including the draft Scripts, and any Interviews and Narration recordings not included in the Master Recording, but excluding Client Materials and the Master Recording. |
| "Affiliate" | any Party, any entity controlling, controlled by, or under common control with such a Party. |
| "Benefit Card" | a card distributed by AAI to its employees, clients and potential clients enabling the cardholder to receive one complimentary Audio Tour at the Site, and where applicable, complimentary admission to the Site. |
| "Client Materials" | any materials provided to AAI by Client in connection with the performance of AAI's duties hereunder, including slides, color prints or color copies of selected objects, catalogues, gallery plans, documentary videos, and other materials, but excluding any AAI Materials and the Master Recording. |
| "Equipment" | the Players, the headsets, any recharging units and any cables and wires used to operate the Players and recharging units as supplied by AAI to Client. |
| "IP Rights" | all patents, copyrights, trademarks, service marks, trade names, rights in designs, database rights, know-how, and trade secrets, whether or not any of these is registered and including applications for registration of any of the foregoing, and all rights or forms of protection of a similar nature or having equivalent or similar effect to any of the foregoing anywhere in the world. |
| "Master Recording" | the final master recording of the Production contained on disk, tape, hard drive, memory card, or other medium. |
| "Message" | an individual audio track included in the Audio Tour and playable on the Player, generally of between sixty to ninety (60—90) seconds duration. |
| "Narration" | the finished audio track of the commentary spoken by the narrator for each Message, separate from additional elements such as Interviews, sound effects and/or music. |
| "Production" | the final sound mix for the Audio Tour, including all Narration, interviews, sound effects, music and other audio components. |
| "Production Schedule" | the written schedule approved by Client in accordance with **Section 1** (*Script & Production Development*) hereof that details the responsibilities of the Parties, the steps of the production process to be taken, and the dates by which each step must be completed by Client or AAI. |
| "Site Public Hours" | the hours during which the Site is open to the public, as set forth in the Contract Summary. |
| "Stop" | a particular object, stage, or place within the Site at which notices of index numbers for a Message on the Player shall be given to visitors so that a Message may be selected and played. |

| | |
|---|---|
| "Stop List" | the final written list, submitted by Client to AAI, of the Stops within the Audio Tour. |
| "Visitor" | any visitor to the Site who has paid any entrance fee to the Site, including organized groups, complimentary visitors in excess of the two hundred complimentary visitors allowed hereunder, visitors that do not use the Audio Tour, and those visitors who have purchased advance tickets but have not redeemed them. Children six (6) years of age and under shall not qualify as a Visitor under this Agreement. |
| "Visitor Demand" | the rate at which Site visitors request the Audio Tour, taking into account a reasonable wait or queuing time. |
| "Working Day" | any day excluding weekends, U.S. federal holidays, and U.S. state holidays observed by either Party. |

# ANTENNA|UDIO

### Exhibit I
### Download Release

This Exhibit I ("Download Release") confirms our discussions and the consent of Client to the use and distribution of the audio tours (collectively, the "Audio Tours") produced by AAI under the attached Audio Tour Agreement, including without limitation any Translations, on or via digital download from the following channels ("Distribution Channels"):

> (1) any website owned or operated by AAI, including without limitation antennaaudio.com;
> (2) any website owned or operated by a parent, subsidiary or affiliate of AAI, including without limitation discovery.com and discoverystore.com; and
> (3) the website(s) of any licensee of AAI, including without limitation Apple's iTunes store.

This consent is effective as of the date of your signature on the Agreement.

In addition, Client will provide a mutually agreeable relevant digital image ("Image" or "Image(s)") to be used as the representative image for each Audio Tour on the Distribution Channels. Such Image shall be delivered to AAI as a high-resolution tiff RBG file already cleared for such use either from the Client's own collection or from a rights holder with the appropriate clearances of the artists.

For the avoidance of doubt, Client consents to any and all copying, recording, encoding, transmission, performance, display and distribution of the Image(s) and Audio Tours that may be required (as determined by AAI in AAI's sole discretion) in connection with distribution of the Audio Tours via the Distribution Channels. Client's consent also authorizes AAI and its partners in the Distribution Channels to edit and modify the Image(s) and Audio Tours as may be required and/or editorially appropriate (as determined by AAI in AAI's sole discretion) for distribution via the Distribution Channels, and to perform, display and distribute the Image(s) and limited portions of the Audio Tours for promotional purposes. Client's consent also authorizes AAI and the Distribution Channels to use and promote Client's name and trademarks in connection with the sale, distribution and promotion of the Audio Tours via the Distribution Channels. Client acknowledges and agrees that users worldwide shall have access to the Distribution Channels and to the Image(s) and Audio Tours via the Distribution Channels.

AAI shall be responsible for ensuring the proper clearance of any and all content in the Audio Tours for distribution of the Audio Tours via the Distribution Channels, except any content that was originally created and/or provided by Client under the Agreement for inclusion in the Audio Tours ("Client Materials"), and any Image(s) provided by Client, for which clearances shall be the sole responsibility of Client. For the avoidance of doubt, Client shall ensure that, prior to distribution of the Audio Tours via the Distribution Channels, the Image(s) shall be cleared by Client for such distribution, and any Client Materials not previously cleared by Client for such distribution shall be: (1) properly cleared by Client for such distribution; or (2) removed by AAI from the downloadable version of the Audio Tours, provided Client notifies AAI in writing, and as per the Production Schedule, of any and all such restricted Client Materials. Client represents and warrants that: (1) it has the full power and authority to enter into this Download Release and to grant the rights herein granted; (2) no rights granted are in conflict with the rights of any third party; and (3) when used as contemplated hereunder, the Client Materials and Image(s) do not and will not violate any rights of copyright, property, trademark or service mark, or rights of privacy or publicity, of any third party, or violate any state, federal or international statute or regulation, or contain any matter that is libelous or would be injurious to the user. Client shall further indemnify and hold AAI and its parent, subsidiary and affiliated companies harmless in the event of any claims, damages, costs, expenses (including reasonable attorneys' fees) or other liability arising out of any breach or alleged breach of Client's representations, warranties or obligations contained in this Download Release.

In consideration for the consent herein provided, AAI will pay Client fifty percent (50%) of all revenues from any sales of the Audio Tours through the Distribution Channels, after a deduction of:

are conducted through such Distribution Channel (e.g., Apple currently deducts thirty percent (30%), but such deduction is subject to change).

No royalty will be due for AAI's or the Distribution Channels' transmission or distribution of a commercially reasonable (as determined by the Distribution Channel and/or AAI in the Distribution Channel's and/or AAI's sole discretion as applicable) number of copies of the Image(s) and Audio Tours or portions thereof for free review, sampling and advertising and promotion. Furthermore, the Client acknowledges and agrees that Apple's iTunes reserves the right to market, promote and advertise the Audio Tours and Image(s) on its online "store" as it determines in its sole discretion, and AAI has no control over such marketing, promotion and advertising, if any. AAI will provide Client with an accounting of sales of the Audio Tours through the Distribution Channels, and any royalties due Client on a quarterly basis, ten (10) weeks after the close of each calendar quarter.

The Audio Tours and Image(s) shall be available through some or all of the Distribution Channels so long as AAI deems them to be commercially viable. This Download Release does not obligate AAI to make the Image(s) and/or Audio Tours available through any of the Distribution Channels.